UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

----------------------------------------------------------------- x
THOMAS JOSEPH WOJCIK,                              :
                                                   :
                              Plaintiff,           :
                                                   :          **INITIAL REVIEW**
          -against-                                :          **ORDER**
                                                   :
ROBERT SAAS, *et al.*,                             :          3:24-cv-00500 (VDO)
                                                   :
                              Defendants.          :
----------------------------------------------------------------- x

**VERNON D. OLIVER**, United States District Judge:

Plaintiff Thomas Wojcik is an inmate in the custody of the Connecticut Department of
Correction ("DOC") and incarcerated at the Osborn Correctional Institution ("Osborn").[1] He
asserted this action *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 for violation of his
constitutional rights against Lieutenant/Captain Robert Saas, Correction Officer Adam
Leonetti, Correction Officer Israel Miranda, K-9 Unit Officer Charles Ellison, Correction
Officer Samantha Borkowski, Captain Zaczynski, Lieutenant Dousis, Corrections Counselor
Gargano, and Warden Denise Walker. Compl., ECF No. 1. He sues all defendants in their
individual and official capacities.

The Prison Litigation Reform Act requires that federal courts review complaints
brought by prisoners seeking relief against a governmental entity or officer or employee of a
governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the
complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim

---

[1] The Court may "take judicial notice of relevant matters of public record." *Giraldo v.
Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). The Connecticut DOC website reflects that Plaintiff
was admitted to DOC on August 30, 2013 and sentenced to seven years of incarceration on
February 21, 2021. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=331456.

upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A.

## I. __FACTUAL BACKGROUND__

While the Court does not set forth all of the facts alleged in Plaintiff's complaint, it summarizes his basic factual allegations here to give context to its rulings below.

While at recreation time at Cheshire Correctional Institution ("Cheshire") on March 30, 2021, Plaintiff was placed in handcuffs and then escorted to the Admitting and Processing Room. Compl. ¶¶ 12–14. He was searched and subjected to a urinalysis test (which returned a negative result). *Id.* ¶ 15. Lieutenant Saas asked him if he had tried to convey Suboxone in legal mail. *Id.* ¶¶ 15–16. Plaintiff denied having any awareness of this legal mail. *Id.* ¶ 17. Lieutenant Saas, Officer Miranda, and Officer Leonetti told him that they "will do their best to bury [him] under the jail." *Id.* ¶ 18.

Lieutenant Saas advised Plaintiff that he would receive a Class A disciplinary report for conspiracy to convey contraband and sent to the Restrictive Housing Unit ("RHU"). *Id.* ¶ 19.

Later, Plaintiff pleaded not guilty to Disciplinary Investigator Borkowski and requested a disciplinary hearing. *Id.* ¶¶ 20–21. Plaintiff was advised that his disciplinary hearing would take place on April 16, 2021. *Id.* ¶ 22. Plaintiff requested an advisor and was assigned Corrections Counselor Gargano to assist him with his defense. *Id.* ¶¶ 23–24.

Plaintiff later requested a continuance of the hearing because Gargano refused to afford him access to disciplinary materials. *Id.* ¶ 25. Disciplinary Investigator Borkowski denied Plaintiff's request for a continuance. *Id.* ¶¶ 29–30.

When Plaintiff was taken to the Disciplinary Hearing on April 16, 2021, Investigator Borkowski would not allow him to speak. *Id.* ¶ 31.

After the Disciplinary Hearing Officer, Lieutenant Dousis, entered the hearing room, she stated that she knew Plaintiff was guilty. *Id.* ¶ 53. After pleading not guilty, Plaintiff asked about his witnesses and was informed that no witnesses had been requested to appear. *Id.* ¶ 54. He then requested a continuance because he had advised Officer Borkowksi that he wanted to have Lieutenant Saas, Officer Miranda, Officer Ellison, and Captain Leonetti appear as witnesses at the hearing. *Id.* ¶ 56. Lieutenant Dousis denied this request and later lied that Plaintiff had not requested witnesses. *Id.* ¶¶ 57–58.

Lieutenant Dousis found Plaintiff guilty of the disciplinary charges and sent him back to his cell in the RHU. *Id.* ¶¶ 28, 34. At the hearing, Lieutenant Dousis failed to provide recommendations for Plaintiff's sanctions. *Id.* ¶ 60.

On April 16, 2021, after the hearing ended, Plaintiff was provided with the Disciplinary Process Summary Report. *Id.* ¶ 35. The disciplinary process summary report indicated that Plaintiff received sanctions of fifteen days in punitive segregation from April 6 to April 21, 2021, ninety days loss of commissary, ninety days loss of telephone privileges, and fifteen days loss of Risk Reduction Earned Credit ("RREC"). *Id.* ¶ 36.

On April 19, 2021, Officer Borkowski gave Plaintiff a second Disciplinary Process Summary Report that she had retyped. *Id.* ¶ 59. It indicated that the prior Disciplinary Process Summary Report had misstated that Plaintiff had not requested any witnesses when he had

requested Captain Leonetti as a witness. *Id.* at 48. Plaintiff maintains that the second Disciplinary Process Summary Report contained false information concerning Plaintiff's failure to request witnesses and was signed by Officer Borkowski, but not Lieutenant Dousis. *Id.* ¶ 59. It imposed the same sanctions of fifteen days segregation, ninety days loss of commissary, ninety days loss of telephone privileges, and fifteen days loss of RREC. *Id.* ¶ 62, at 45–48 (Disciplinary Process Summary Reports). Plaintiff claims that he served an extra day of punitive segregation and was confined in segregation for a total of 23 days commencing on March 30, 2021. *Id.* ¶¶ 62, 65.

Plaintiff appealed the disciplinary decision on April 28, 2021. *Id.* ¶ 38. On June 14, 2021, Plaintiff's guilty finding for the conspiracy charge was overturned on the grounds that the "Disciplinary Report" was not "consistent with the process integrity outlined within Administrative Directive 9.5, Code of Penal Discipline." *Id.* ¶ 73, at 55 (Appeal Decision).

Plaintiff asserts that he had been found guilty on the basis of the Intelligence Team opening his legal mail outside of his presence. *Id.* ¶ 37. Warden Walker allegedly "signed off" or permitted Lieutenant Saas, Officer Miranda, Officer Ellison, and Captain Leonetti to read his privileged legal correspondence. *Id.* ¶ 33, 44–45, 49–50, 35 (Grievance). He alleges that Captain Zaczynski violated the relevant DOC administrative directive when he took photographs of Plaintiff's legal mail. *Id.* ¶ 66.

In December 2021, Plaintiff was advised that there was a warrant from the Connecticut Superior Court based on the facts underlying his disciplinary charges for conspiracy to convey contraband. *Id.* ¶ 75. Plaintiff was later served with this warrant. *Id.* ¶ 76. After fighting the charges for five months, Plaintiff prevailed when the State of Connecticut dropped the case on April 21, 2023; Plaintiff's Public Defender explained in a letter dated April 21, 2023: "This

4

victory is owing in part to your conclusion that DOC personnel violated your rights when they opened an envelope marked as legal mail without you being present." *Id.* ¶ 79, at 58.

## II.   **LEGAL STANDARD**

Under 28 U.S.C. § 1915A, courts must review prisoner civil complaints in which a prisoner seeks redress from a governmental entity and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

 Although highly detailed allegations are not required, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim . . . that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. This plausibility standard is not a "probability requirement" but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). However, the court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft*, 556 U.S. at 678.

With respect to *pro se* litigants, it is well-established that "[p]ro se submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) (per curiam)). However, *pro se* litigants are still required to comply with Rule 8 of the Federal Rules of Civil Procedure. *See, e.g.*, *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004) ("[T]he basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike."). Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (alteration in original). A statement of claim that is not short and direct places "an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.'" *Harden v. Doe*, No. 19-CV-3839, 2019 WL 2578157, at *2 (S.D.N.Y. June 24, 2019) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)) (internal quotation marks and citation omitted).

## III.  <u>DISCUSSION</u>

Plaintiff's complaint asserts violations of his rights under the First, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and under the DOC Administrative Directives.[2]

---

[2] Plaintiff also asserts that Defendants have violated his Fourth and Fifth Amendment rights. Neither of these Amendments is applicable to this case.

The Fourth Amendment protects against "unreasonable" governmental "searches and seizures." U.S. Const. amend. IV. The "proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). However, "inmates retain a limited right of bodily privacy under the Fourth Amendment." *Harris v. Miller*,

6

Section 1983 of Title 42 provides that:

[e]very person who, under color of any statute ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

"The common elements to all § 1983 claims are: '(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Lee v. City of Troy*, 520 F. Supp. 3d 191, 205 (N.D.N.Y. 2021) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'") (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991)). This is true with respect to supervisory officials as well. *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020) (A plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability" in order to hold a state official

---

818 F.3d 49, 57 (2d Cir. 2016). Plaintiff's complaint fails to allege facts to suggest a violation of right to bodily privacy under the Fourth Amendment.

    The Court assumes that Plaintiff intended to bring claims that Defendants violated his Fifth Amendment due process rights. However, the Fifth Amendment's Due Process Clause does not apply to state actors. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002); *Baltas v. Rizvani*, No. 21-CV-436, 2022 WL 17251761, at *17 (D. Conn. Nov. 28, 2022). Any Fifth Amendment claims are dismissed as not plausible under 28 U.S.C. § 1915A(b)(1).

liable for damages under § 1983. "[I]t is not enough for [a plaintiff] to show that [a defendant] was negligent, or even grossly negligent, in her supervision of the correctional officers or in failing to act on the information she had.").

The Court first considers whether Plaintiff has alleged any plausible claims against Defendants in their individual capacities.

### A.      Interference with Legal Mail

 The Court construes Plaintiff's allegations concerning interference with his legal mail as implicating violations of his constitutional right to access the court, his First Amendment right to free flow of legal mail, and Sixth Amendment right to effective counsel.

In his statement of claims, Plaintiff asserts that Officer Borkowski is liable for constitutional violation arising from the alleged interference with his legal mail. Plaintiff has not, however, alleged facts to support an inference that Officer Borkowski had any direct involvement in the alleged conduct concerning his legal mail that may give rise to his claims of violation of a right to court access, First Amendment right to free flow of legal mail, and Sixth Amendment right to effective counsel. *See Tangreti*, 983 F.3d at 620. Accordingly, Plaintiff may not proceed against Officer Borkowski on any of these claims.

### 1.      Access to the Courts

The First Amendment to the United States Constitution (in conjunction with the other constitutional provisions) guarantees prisoners of "the right of access to the courts." *Lewis v. Casey*, 518 U.S. 343, 350 (1996); *see also Morello v. James*, 810 F.2d 344, 346 (2d Cir. 1987).[3] Thus, prison officials are prohibited from "actively interfering with inmate's attempts

---

[3] The right of access to the courts may arise under the United States Constitution's Privileges and Immunities Clause of Article IV, section 2, the Petition Clause of the First

to prepare legal documents or file them…" *Lewis*, 518 U.S. at 350 (internal citation omitted). But, to prevail in a § 1983 access to the court claim, an inmate-plaintiff must demonstrate that a prison official "actually interfered with his access to the courts or prejudiced an existing action." *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 345 (N.D.N.Y. 2010). For denial of access to the courts, an inmate is required to demonstrate that he suffered an actual injury as a result of the conduct of the defendants. *Lewis*, 518 U.S. at 351–53. To establish an actual injury, an inmate must allege facts showing that the defendant took or was responsible for actions that hindered his efforts to pursue a "nonfrivolous" legal claim. *Christopher v. Harbury*, 536 U.S. 403, 414–15 (2002) ("Whether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost ... plaintiff must identify a 'nonfrivolous,' 'arguable' underlying claim" that he sought to pursue or seeks to pursue in court) (citation omitted); *see Lewis*, 518 U.S. at 353 (suggesting that the injury requirement of an access to courts claim is satisfied if an "inmate could demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." (footnotes omitted)).

Here, Plaintiff's allegations fail to identify a nonfrivolous claim that was prejudiced as a result of the any interference with his access to the court. *See Chaney v. Koupash*, No. 04-CV-136, 2008 WL 5423419, at *10 (N.D.N.Y. Dec. 30, 2008) (dismissing access to the court claim, in part, because inmate-plaintiffs "failed to state how defendants' actions contributed to plaintiffs' alleged damages or which demonstrable injuries plaintiffs

---

Amendment, and the Due Process and Equal Protection Clauses. *See Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002).

suffered."). Accordingly, to the extent Plaintiff asserts deprivation of court access claims, they must be dismissed as not plausible.

      2.    <u>First Amendment Violation by Interfering with Free Flow of Mail</u>

"It is well-settled that the First Amendment serves to protect the flow of information to prisoners; thus, any limitations on prisoner access to information must be reasonably related to a legitimate penological interest." *Rapp v. Barboza*, No. 13-CV-0599, 2016 WL 4223974, at *7 (N.D.N.Y. July 19, 2016) (citing *inter alia Turner v. Safley*, 482 U.S. 78, 89–90 (1987)); *see also Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) ("[A] prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment."). "Restrictions on prisoners' mail are justified only if they further one or more of the substantial governmental interests of security, order, and rehabilitation ... and must be no greater than is necessary or essential to the protection of the governmental interest involved." *Davis*, 320 F.3d at 351. (quotation and citation omitted). Non-legal mail is "afforded less protection than legal mail," and "an isolated failure to mail an inmate's [non-legal] letter does not state a constitutional violation." *Edwards v. Horn*, No. 10-CV-6194, 2012 WL 760172, at *7 (S.D.N.Y. Mar. 8, 2012) (citations omitted). Crediting Plaintiff's allegations about the Defendant's conduct to open and read his legal mail, the Court will permit Plaintiff to proceed on First Amendment claims against Lieutenant Saas, Officer Miranda, Officer Ellison, and Captain Leonetti in their individual capacities. The Court also permits Plaintiff to proceed for damages on a claim of First Amendment violation against Captain Zaczynski, who allegedly photographed Plaintiff's legal mail.

Plaintiff has not clearly alleged facts to suggest Warden Walker's direct involvement in the legal mail interference. To the extent that his allegations may be construed to read that

she ordered the opening of his legal or "signed off" on a request to open his legal mail, Plaintiff

may proceed against Warden Walker in her individual capacity for further development.

In sum, Plaintiff may proceed on his First Amendment interference with legal mail

claims against Lieutenant Saas, Officer Miranda, Officer Ellison, Captain Leonetti, Captain

Zacynski, and Warden Walker in their individual capacities.

3.    Sixth Amendment Right to Effective Counsel

In his complaint, Plaintiff asserts that the legal mail interference violated his Sixth

Amendment rights. Compl. ¶ 44.

"The Sixth Amendment provides that '[i]n all criminal prosecutions, the accused shall

enjoy the right ... to have the Assistance of Counsel for his defense.'" U.S. Const. amend. VI;

*United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). Under the Sixth Amendment, a

criminal defendant is constitutionally entitled to effective assistance of counsel. *Strickland v.

Washington*, 466 U.S. 668, 686 (1984). The Sixth Amendment right to effective assistance of

counsel "only applies to a defendant's trial and first appeal as of right, not to appeals afforded

on a discretionary basis, collateral proceedings, or civil proceedings such as civil rights

claims challenging prison conditions." *Bourdon v. Loughren*, 386 F.3d 88, 96 (2d Cir. 2004)

(citing *Pennsylvania v. Finley*, 481 U.S. 551, 555–57 (1987)); *see also Wolff v. McDonnell,*

418 U.S. 539, 576 (1974) (rejecting application of Sixth Amendment to claim that "would

insulate all mail from inspection, whether related to civil or criminal matters").

In the specific context of a criminal defendant inmate's access to counsel, the Second

Circuit concluded that a restriction on a criminal defendant's contact with his or her attorney

is "unconstitutional where the restriction unreasonably burdened the inmate's opportunity to

consult with his [or her] attorney and to prepare his defense." *Benjamin v. Fraser,* 264 F.3d

175, 187 (2d Cir. 2001) (quotation and citation omitted). "Examples of unconstitutional limits on prisoners' rights to counsel include a ban on all visits by paralegals employed by criminal defense counsel and repeated delays in meetings between prisoners and attorneys that resulted in attorneys forgoing the meetings." *Schick v. Apker*, No. 07-CV-5775, 2009 WL 2016926, at *2 (S.D.N.Y. July 10, 2009) (citing *Smith v. Coughlin*, 748 F.2d 783, 789 (2d Cir. 1984); *Benjamin*, 264 F.3d at 187). However, "states have no obligation to provide the best manner of access to counsel." *Bellamy v. McMickens*, 692 F. Supp. 205, 214 (S.D.N.Y. 1988). Thus, a denial of one method of communicating with an attorney does not give rise to a constitutional violation if the inmate plaintiff has an another means of communicating with counsel. *See Lowery v. Westchester Cty. Dep't of Correction*, No. 15-CV-4577, 2017 WL 564674, at *3–4 (S.D.N.Y. Feb. 10, 2017); *See, e.g.*, *Groenow v. Williams*, No. 13-CV-3961, 2014 WL 941276, at *7 (S.D.N.Y. Mar. 11, 2014) ("Because Groenow has not alleged that he was denied all opportunities to consult confidentially with his attorney, he has not plausibly alleged a Sixth Amendment violation" even though "monitoring telephone calls with his attorney most likely had a chilling effect on Groenow's ability to communicate ffectively with his attorney"); *Schick*, 2009 WL 2016926, at *2 (prison officials' refusal to grant plaintiff's request for an unmonitored call with his criminal appellate attorney on three occasions "did not 'unreasonably burden' his opportunity to consult with counsel and to prepare his appeal" where plaintiff had other means of access to his attorneys).

Plaintiff has not alleged facts to suggest that he was subjected to a restriction that unreasonably burdened his ability to consult with his defense attorney and prepare his defense. Accordingly, Plaintiff has not alleged any plausible claims of a Sixth Amendment violation.

B.       **Eighth Amendment Violation**

The Eighth Amendment to the U.S. Constitution prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. Prison conditions can constitute cruel and unusual punishment in violation of the Eighth Amendment if prison officials act, or fail to act, with "deliberate indifference to a substantial risk of serious harm to a prisoner." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). To state a claim of deliberate indifference to health or safety due to unconstitutional conditions of confinement, an inmate must demonstrate both an objective and a subjective element. To meet the objective element, the inmate must allege that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a life necessity or a "human need[]" or posed "a substantial risk of serious harm" to his health or safety. *Farmer*, 511 U.S. at 834; *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The Supreme Court has identified the following basic human needs or life necessities of an inmate: food, clothing, shelter, medical care, warmth, safety, sanitary living conditions, and exercise. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989); *Rhodes,* 452 U.S. at 348. Conditions are considered in combination when they have a "mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *See Wilson*, 501 U.S. at 304.

For claims of indifference to health and safety, the prisoner must allege facts to suggest that the defendants acted not merely carelessly or negligently, but with a subjectively reckless state of mind akin to criminal recklessness. In other words, Plaintiff must allege that the defendants were aware of a substantial risk that he would be seriously harmed if they did

not act. *See, e.g.*, *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013); *Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012) (per curiam); *Collazo v. Pagano*, 656 F.3d 131,135 (2d Cir. 2011)

Plaintiff's claims of Eighth Amendment violation are not entirely clear. He appears to assert that Defendants have violated the Eighth Amendment due to his restrictive confinement. *See* Compl. ¶¶ 92, 96.  But the only facts he alleges concerning the conditions of restrictive confinement are that he was in a cell for twenty-four hours. Compl. ¶ 95. The Court notes that several decisions from this District have determined that the general DOC restrictive confinement conditions do not give rise to a deprivation of a basic human need. *See Gamble v. Garcia*, No. 20-CV-1273, 2020 WL 5645622, at *5 (D. Conn. Sept. 22, 2020) (concluding allegations about Cheshire RHU conditions did not support Eighth Amendment violation); *Eckert v. Grady*, No. 19-CV-982, 2020 WL 3129478, at *11 (D. Conn. June 12, 2020) (finding no deprivation of basic human need arising from conditions of SRG Phase 3 imposed on plaintiff for two distinct three-month periods, including limited access to telephone calls, visits from family members, limitations on haircuts, restriction on mail in his cell, restrictions on recreation, and confinement in cell 23 hours a day, including for meals).

In addition, Plaintiff's complaint fails to include allegations to support the second element of the Eighth Amendment analysis. No facts suggest that any defendant was aware of, but ignored, conditions posing a substantial risk of serious harm to Plaintiff. Thus, absent allegations to satisfy either the objective or subjective prongs of the Eighth Amendment analysis, the Court must dismiss Plaintiff's claims of Eighth Amendment violation.

C.      **Fourteenth Amendment Due Process**

Plaintiff's complaint asserts Fourteenth Amendment due process violations arising from his disciplinary charges and property deprivation. "[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). Procedural due process analysis "proceeds in two steps: [a court] first ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so ... whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam).

Liberty interests may arise from either the Due Process Clause itself or "from an expectation or interest created by state laws or policies." *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005). In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court recognized that "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Id.* at 483–84. In the prison context, a prisoner must show that he was subjected to an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Id.* at 484 (prisoner subjected to a disciplinary term of thirty days confinement in restrictive housing did not sustain a deprivation of a liberty interest for purposes due process).[4] Thus, the Court must examine the actual punishment received, as well as the conditions and duration of the punishment. *See Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). "The inquiry into the severity of confinement assesses whether differences in conditions between a

---

[4]*Sandin* applies to circumstances involving both administrative and disciplinary segregation. *Arce v. Walker*, 139 F.3d 329, 335 (2d Cir. 1998).

restrictive housing status and the general population or other restrictive statuses constitute a significant hardship." *Taylor v. Rodriguez*, 238 F.3d 188, 195 (2d Cir. 2001).

"[T]he duration of [segregated] confinement is a distinct factor bearing on atypicality and must be carefully considered." *Colon v. Howard,* 215 F.3d 227, 231 (2d Cir. 2000). There is no "bright line rule that a certain period of [segregated] confinement automatically fails to implicate due process rights." *Palmer*, 364 F.3d at 64. Generally, a long period of segregation—such as more than 305 days—"is sufficiently atypical to trigger due process protections." *Ellerbe v. Jasion*, No. 12-CV-00580, 2015 WL 1064739, at *3 (D. Conn. Mar. 11, 2015). "Where the plaintiff was confined for an intermediate duration—between 101 and 305 days—development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required." *Palmer*, 364 F.3d at 64–65 (internal quotation marks omitted). "[R]estrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and thus require proof of conditions more onerous than usual." *Washington v. Afify*, 681 F. App'x 43, 45 (2d Cir 2017); *Kalwasinski v. Morse*, 201 F.3d 103, 107–08 (2d Cir. 1999) (discussing factors relevant to deciding if confinement in SHU constitutes an atypical hardship).

If there is a liberty interest, the level of due process required depends upon the context of the proceeding. For a disciplinary matter, an inmate is entitled to advance written notice of the charge, adequate time to prepare a defense, a written statement of the reasons for the disciplinary action taken, and a limited opportunity to present witnesses and evidence in his defense. *Wolff*, 418 U.S. at 561–70. Due process requires that notice be sufficient to inform the inmate of the grounds for the charges to enable the inmate to prepare a defense to those charges. *Taylor*, 238 F.3d at 192–93. For an administrative proceeding, the inmate is entitled

only to "some notice of the charges against him and an opportunity to present his views [either orally or in writing] to the prison official charged with deciding" the matter. *Hewitt v. Helms*, 459 U.S. 460, 476 (1983).

      1.    <u>Administrative Segregation and Punitive Sanctions</u>

According to Plaintiff's allegations and attachments to his complaint, Plaintiff commenced his administrative segregation on March 30, 2021 and his punitive segregation on April 6, 2021; he remained in punitive segregation through April 21, 2021. Compl. ¶¶ 62, 64.

In *Sandin*, the Supreme Court held that confinement in the restrictive housing unit for thirty days for disciplinary reasons did not implicate a constitutionally protected liberty interest. 515 U.S. at 485–86. District courts within the Second Circuit have routinely declined to find a liberty interest where an inmate's restrictive confinement is for a short period—such as Plaintiff's five days in administrative confinement and his fifteen (or even sixteen)[5] days in punitive segregation—and there is no indication that the inmate suffered any "unusual conditions" during the confinement. *See Thomas v. Dep't of Correction*, No. 23-CV-1681, 2024 WL 1658460, at *6 (D. Conn. Apr. 17, 2024) (noting Second Circuit has held a brief confinement in restrictive housing, such as the fifteen days, does not constitute an atypical and significant hardship and is insufficient to support a claim for denial of due process); *Marrero-Alejandro v. Quiros*, No. 21-CV-00542, 2023 WL 2988890, at *8 (D. Conn. Apr. 18, 2023) (concluding the 12 days Plaintiff spent in punitive segregation did qualify as the deprivation of a liberty interest); *Greathouse v. Meddaugh*, 632 F.Supp. 3d 3,

---

[5] Plaintiff claims that he served sixteen rather than fifteen days of punitive segregation. Compl. ¶ 62.

15 (N.D.N.Y. 2022), *aff'd*, No. 22-2834, 2023 WL 5439456 (2d Cir. Aug. 24, 2023) (noting district courts within Second Circuit routinely hold that restrictive confinement for 30 days, under ordinary restrictive confinement conditions, does not implicate a liberty interest protected by the Due Process clause).

As Plaintiff's administrative and punitive segregation were of short duration and the alleged facts do not suggest that his confinement conditions imposed an "atypical and significant hardship" in relation to the "ordinary incidents of prison life," Plaintiff has not alleged a plausible liberty interest to support his due process challenge to his disciplinary charges and proceedings. *See Sandin*, 515 U.S. at 484. The additional sanctions of loss of commissary and telephone privileges do not alter this determination. *See Baldwin v. Arnone*, No. 12-CV-243, 2013 WL 628660, at *3, *8 (D. Conn. Feb. 19, 2013) (holding that sanctions of "fifteen days confinement in punitive segregation, thirty days loss of recreation, and ninety days loss of telephone privileges" is insufficient to demonstrate atypical and significant hardship to support due process claim under *Sandin* and collecting cases).

    2.   <u>Loss of RREC</u>

Nor can Plaintiff proceed with his due process claim under 42 U.S.C. § 1983 based on his fifteen-day loss of RREC, although this sanction may prolong the time that Plaintiff remained incarcerated.

> When a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck v. Humphrey*, 512 U.S. 477, 487 (1994); *Austin v. Cuomo*, No. 20-CV-00893, 2020 WL 7352664, at *5 (W.D.N.Y. Dec. 15, 2020). This is because "Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact

or length of their confinement, and that specific determination must override the general terms of [section] 1983." *Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973). In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court made clear that *Heck*'s favorable termination rule applies to challenges made under Section 1983 to procedures used in prison disciplinary proceedings that deprived a prisoner of good time credits. *Id.* at 646 ("The principal procedural defect complained of by respondent would, if established, necessarily imply the invalidity of the deprivation of his good-time credits.").

"If an inmate earns RREC, the application of RREC to an inmate's sentence affects the overall duration of the inmate's confinement" and "in general, a claim regarding the length of one's sentence must be brought as a habeas claim." *See Green v. Riffo*, No. 18-CV-960, 2019 WL 2302412, at *9 (D. Conn. May 29, 2019). Plaintiff has not alleged or shown that he has invalidated his conviction through a habeas petition in state court. Accordingly, Plaintiff's Section 1983 due process claim is barred by *Heck*.

Moreover, Plaintiff's forfeiture of RREC as a result of his guilty finding does not raise a plausible liberty interest. RREC is governed by Connecticut General Statutes § 18-98e, which provides that an inmate may earn risk reduction credit for adherence to the inmate's offender accountability plan, for participation in eligible programs and activities, and for good conduct and obedience to institutional rules as designated by the commissioner, provided (1) good conduct and obedience to institutional rules alone shall not entitle an inmate to such credit, and (2) the commissioner or the commissioner's designee may, in his or her discretion, cause the loss of all or any portion of such earned risk reduction credit for any act of misconduct or insubordination or refusal to conform to recommended programs or

activities or institutional rules occurring at any time during the service of the sentence or for other good cause. If an inmate has not earned sufficient risk reduction credit at the time the commissioner or the commissioner's designee orders the loss of all or a portion of earned credit, such loss shall be deducted from any credit earned by such inmate in the future. Conn. Gen. Stat. § 18-98e(b). Thus, Plaintiff cannot assert a Fourteenth Amendment claim on the basis of his RREC forfeiture because Connecticut law confers no liberty interest in earned or future risk reduction credit. *Petaway v. Osden*, No. 17-CV-00004, 2019 WL 1877073, at *4 (D. Conn. Apr. 26, 2019), *aff'd on other grounds*, 827 F. App'x 150 (2d Cir. 2020) (noting RREC "is discretionary in nature and confers no liberty interest in earned or future risk reduction credit.") (citing *Green v. Comm'r of Correction*, 194 A.3d 857, 864 (Conn. App. Ct. 2018) and *Perez v. Comm'r of Correction*, 326 Conn. 357, 370–72 (2017)).

As Plaintiff has not alleged any liberty interest to support his Fourteenth Amendment due process challenges to his administrative segregation, punitive segregation, and loss of privileges and RREC, the Court must dismiss as not plausible his claims of due process violation asserted against Warden Walker, Captain Zaczynski, Hearing Officer Lieutenant Saas, Lieutenant Dousis, Correctional Counselor Gargano, and Correction Officer Borkowski.

  3. <u>Property Deprivation</u>

Plaintiff also asserts that Lieutenant Saas, Correction Officer Miranda, and Correction Captain Leonetti are liable for deprivation of his property (grievances) in violation of Fourteenth Amendment due process. Compl. ¶ 97.

A prisoner can state a due process claim for the loss of property "only if the [s]tate provides no adequate post-deprivation remedy." *Edwards v. Erfe*, 588 F. App'x 79, 80 (2d

Cir. 2015) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)). Connecticut DOC and the State of Connecticut provide adequate remedies for an inmate who complains of lost or destroyed property. *Riddick v. Semple*, 731 F. App'x 11, 13–14 (2d Cir. 2018) (referencing administrative remedy pursuant to DOC Administrative Directive 9.6, claim pursuant to Conn. Gen. Stat. § 4-141, *et seq.* and common law intentional tort claim against individual employees); *Sherman v. Corcella*, No. 19-CV-1889, 2020 WL 4043178, at *17 (D. Conn. July 16, 2020). A prisoner may avail himself of his remedies for property loss under DOC Administrative Directive 9.6. *See* A.D. 9.6 (effective 4/30/2021). Under Connecticut General Statute § 4-141, *et seq.*, "a prisoner may bring a claim against the Connecticut Claims Commission unless there is another administrative remedy for [the prisoner's] claim." *Sherman*, 2020 WL 4043178, at *17. Accordingly, Plaintiff's due process claim against Defendants Saas, Miranda, and Leonetti based on his loss of property are dismissed as not plausible.

### D.  Violation of DOC Administrative Directives

Plaintiff asserts several violations of DOC administrative directives. However, a defendant's failure to comply with prison regulations or administrative directives does not constitute a basis for relief under section 1983 because "a prison official's violation of a prison regulation or policy does not establish that the official has violated the Constitution or is liable to a prisoner under 42 U.S.C. § 1983." *Fine v. UConn Med.*, No. 18-CV-530, 2019 WL 236726, at *9 (D. Conn. Jan. 16, 2019) (citation omitted). Accordingly, such allegations concerning violation of administrative directives fail to state plausible claims under section 1983.

E.      **Official Capacity Claims**

Plaintiff sues defendants in their official capacities and seeks declaratory and injunctive relief.

A plaintiff may seek official capacity relief against a state official only to the extent that he alleges an ongoing violation of his constitutional rights for which a federal court may enter an order of prospective relief against that official in his official capacity. *See, e.g.*, *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)); *Silva v. Farrish*, 47 F.4th 78, 84 (2d Cir. 2022). As Plaintiff is no longer housed at Cheshire, his requests for official capacity relief against Defendants—who are all employed at Cheshire— are moot. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (an inmate's transfer from a correctional facility generally moots claims for declaratory and injunctive relief against officials at that facility). In addition, Plaintiff has not alleged facts to suggest that he is subject to any ongoing or continuing constitutional violation. Accordingly, Plaintiff has not alleged any plausible official capacity claims for injunctive or declaratory relief.

To the extent he asserts official capacity claims for monetary damages against Defendants (all state employees), such claims are dismissed as barred by the Eleventh Amendment. *See e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

IV.    <u>**CONCLUSION**</u>

The Court enters the following orders:

(1)     Plaintiff may **PROCEED** with his First Amendment interference with legal mail claims against Lieutenant Saas, Officer Miranda, Officer Ellison, Captain Leonetti, Captain Zacynski, and Warden Walker in their individual capacities.

(2)    All other claims, including official capacity claims, are **DISMISSED WITHOUT PREJUDICE**. The Court **DISMISSES** all claims against Correction Officer Samantha Borkowski, Lieutenant Dousis, and Corrections Counselor Gargano.

**Plaintiff has two options as to how to proceed in response to this Initial Review Order:**

(1)    If Plaintiff wishes to proceed immediately **only** on the claims set forth in item one above against Lieutenant Saas, Officer Miranda, Officer Ellison, Captain Leonetti, Captain Zacynski, and Warden Walker, he may do so without further delay. If Plaintiff selects this option, he shall file a notice on the docket on or before **July 5, 2024**, informing the Court that he elects to proceed with service as to the claims against Lieutenant Saas, Officer Miranda, Officer Ellison, Captain Leonetti, Captain Zacynski, and Warden Walker set forth in this paragraph. The Court will then begin the effort to serve process on Lieutenant Saas, Officer Miranda, Officer Ellison, Captain Leonetti, Captain Zacynski, and Warden Walker in the capacity described above.

(2)    Alternatively, if Plaintiff wishes to attempt to replead any of the claims asserted in his complaint that have been dismissed in order to attempt to state a viable claim, he may file an amended complaint by **July 5, 2024**. An amended complaint, if filed, will completely replace the complaint, and the Court will not consider any allegations made in the original complaint in evaluating any amended complaint. The Court will review any amended complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If Plaintiff elects to file an amended complaint, the complaint this Initial Review Order addresses will **not** proceed to service of process on any defendant.

(3)     If the Court receives no response from Plaintiff by **July 5, 2024**, the Court will presume that Plaintiff wishes to proceed on the complaint as to the claims permitted to go forward in this Initial Review Order, and Plaintiff will have to show good cause if he seeks to amend the complaint in any manner in the future.

**Changes of Address**. If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c) provides that he **MUST** notify the Court. Failure to do so may result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write **PLEASE NOTE MY NEW ADDRESS** on the notice. It is **not enough** to just write the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate **all the case numbers** in the notification of change of address. Plaintiff should also notify Defendant or counsel for Defendant of his new address.

<strong>SO ORDERED.</strong>

Hartford, Connecticut
June 3, 2024

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge